**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey (SBN 125961)
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110
bobmackeyesq@aol.com

**MIGLIACCIO & RATHOD, LLP**
Jane Manwarring (*pro hac vice* anticipated)
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
jmanwarring@classlawdc.com

*Attorneys for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRITTNEY FOMIN and TAYLOR RAPSKY**, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>**OURA RING, INC.**,<br><br>Defendant. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

PLAINTIFFS Brittney Fomin and Taylor Rapsky ("Plaintiffs") bring this action on behalf of themselves and all other similarly situated individuals, by and through their attorneys, for injunctive relief, restitution, and damages caused by the conduct of Defendant Oura Ring, Inc. ("Defendant" or "Oura"), based upon personal knowledge, the investigation of counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.     Defendant manufactures and sells rings that monitor a range of datasets related to a consumer's health, including sleep, stress, exercise, metabolic health, and more. The most recent iteration of these is the Oura Ring 4 (the "Product"), released in October 2024.

2.      Oura promises that the Product is "comfortable for everyone, crafted to perfection, and long-lasting."[1] However, consumers, including Plaintiffs and Class members, have experienced injuries as a result of the Product overheating, in some cases causing burns and blisters.[2]

3.      The source of the injuries and product failures is a defect with the Oura Ring. Oura Ring 4's sealed, curved lithium-polymer pouch battery cell contains latent manufacturing and/or materials flaws that can trigger an internal short-circuit after ordinary mechanical or charge stress. Because the ring's design omits secondary safety hardware (such as a PTC fuse, thermal cutoff) and keeps the cell at a high state-of-charge, any short escalates into rapid thermal runaway; the titanium/ceramic chassis then conducts the heat directly to the wearer's skin, causing burns or blisters. This failure of materials and design is referred to throughout this Complaint as the "Defect."

4.      Oura has acknowledged that consumers have experienced these issues, yet continues to sell, market, and distribute the Product without even warning of the risks of bodily harm, putting consumers at further risk of injury.[3]

5.      Plaintiffs and the putative class bring claims against Oura for fraudulent concealment/non-disclosure and unjust enrichment. Plaintiff Fomin and the New York Subclass additionally bring a claim for violations of the New York General Business Law § 349. Plaintiff Rapsky and the Pennsylvania Subclass additionally bring a claim for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. §§ 201.1, *et seq.* ("UTPCPAL").

---

[1] *Why Oura*, OURA RING, https://ouraring.com/why-oura (last visited Mar. 27, 2026).
[2] *See, e.g.*, Far-Yogurtcloset369, *Ring started smoking*, REDDIT (Dec. 6, 2025), https://www.reddit.com/r/ouraring/comments/1pf2fzv/ring_started_smoking/?share_id=yieM30FZj4w8nlJh0pMFK&utm_content=1&utm_medium=android_app&utm_name=androidcss&utm_source=share&utm_term=1; stubentiger123, *Oura should address the recent overheating/smoking incidents*, Reddit (Dec. 6, 2025), https://www.reddit.com/r/ouraring/comments/1pfziur/oura_should_address_the_recent_overheatingsmoking/.
[3] Oura_Ring commented on the above-referenced Reddit post, *Oura should address the recent overheating/smoking incidents*, Reddit (Dec. 6, 2025), https://www.reddit.com/r/ouraring/comments/1pfziur/oura_should_address_the_recent_overheatingsmoking/, stating, "Thank you for raising this. We're aware of the reports shared here and are actively reviewing the individual cases directly with the members involved. We take any safety-related concern seriously and are working to evaluate the details."

**JURISDICTION AND VENUE**

6.    Jurisdiction is proper in this District under 28 U.S.C. § 1332(d)(2) because Plaintiffs and Defendant are citizens of different states and the amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs.

7.    This Court has personal jurisdiction over Defendant because it conducted and continues to conduct substantial business in California, it has sufficient minimum contacts with California, and its principal place of business is in California.

8.    Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant resides in this District and conducts business in this District.

**PARTIES**

9.    Plaintiff Brittney Fomin is a resident of the State of New York. She purchased the Oura Ring 4 from Defendant's Website on July 11, 2025.

10.    Plaintiff Taylor Rapsky is a resident of the State of Pennsylvania. She purchased the Oura Ring 4 at a Target located in Greensburg, Pennsylvania, on November 28, 2025.

11.    Defendant Oura Ring, Inc. is a company incorporated in the State of Delaware with its principal place of business in the State of California. Its global headquarters are in San Francisco. Defendant has offices in San Francisco, San Diego, Helsinki, and Oulu. Defendant primarily sells "smart rings" that "paint a truly holistic picture of [one's] health."[4]

**FACTUAL BACKGROUND**

12.    For the past ten years, Defendant has manufactured and sold rings that monitor a range of datasets related to a consumer's health, including sleep, stress, exercise, metabolic health, and more.[5] Defendant tells consumers, "Oura gives you unlimited access to accurate data and information about your body, so that you can make more informed decisions, and lead a better, healthier life."[6]

13.    Defendant has released four generations of the Oura Ring. The most recent iteration of these is the Product, released in October 2024.

---

[4] *Why Oura*, OURA RING, https://ouraring.com/why-oura (last visited Apr. 3, 2026).
[5] *About Us*, OURA RING, https://ouraring.com/why-oura (last visited Apr. 3, 2026).
[6] *Id.*

14.     The Product is powered by lithium polymer batteries.[7] The lithium polymer battery is non-user replaceable. When the Product has a low battery, consumers place the entire Product onto a charging device.

15.     The batteries in the Product are measured in milli-ampere hours ("mAh"), which is a unit of electric charge that expresses the capacity of a battery – how much total energy a battery can discharge before needing to be recharged. A battery's discharge rate is the amount of current being drawn from the battery. The length of time a battery will run depends on both the battery's capacity and discharge rate. The battery capacity for the Product varies by ring size, ranging from 15mAh to 22mAh.[8]

***The Dangers of the Lithium Polymer Batteries in the Product***

16.     Lithium batteries are often used in consumer electronics. However, they present inherent risks which require software, hardware, and design solutions and protections to operate safely. Lithium batteries may cause injury from a fire and/or explosion if "they have design defects, are made of low quality materials, are assembled incorrectly, are used or recharged improperly, or are damaged."[9] The U.S. Consumer Product Safety Commission released a report in 2018, reporting that over 25,000 overheating or fire incidents involving more than 400 types of lithium battery-powered consumer products occurred over a five-year period.[10]

17.     These issues are typically caused by thermal runaway, which occurs when the battery's internal temperature rapidly increases due to "internal short circuits, overcharging, physical damage, or exposure to high temperatures."[11]

---

[7] *Ring Battery Tips*, OURA RING, https://support.ouraring.com/hc/en-us/articles/360046218953-Ring-Battery-Tips (last visited Apr. 3, 2026).
[8] *Product Safety & Use*, OURA RING, https://support.ouraring.com/hc/en-us/articles/43395388251283-Product-Safety-Use (last visited Apr. 3, 2026).
[9] Occupational Safety and Health Administration ("OSHA"), *Preventing Fire and/or Explosion Injury from Small and Wearable Lithium Battery Powered Devices*, SAFETY AND HEALTH INFORMATION BULLETIN (June 20, 2019), *available at* https://www.osha.gov/sites/default/files/publications/SHIB011819.pdf.
[10] *Id.* (internal citation omitted).
[11] Emory Walker, *Are Lithium Polymer Batteries Safe to Use in Everyday Devices?*, WALKER METAL SMITH, https://walkermetalsmith.com/are-lithium-polymer-batteries-safe/ (last visited Apr. 3, 2026).

18.    Oura Ring 4's sealed, curved lithium-polymer pouch battery cell contains latent manufacturing and/or materials flaws that can trigger an internal short-circuit after ordinary mechanical or charge stress. Because the ring's design omits secondary safety hardware and keeps the cell at a high state-of-charge, any short escalates into rapid thermal runaway; the titanium/ceramic chassis then conducts the heat directly to the wearer's skin, causing burns or blisters. This is the "Defect."

19.    Importantly, for little extra money, Oura could have incorporated at least one of three layers of secondary protection to address the Defect, namely: microscale resettable fuses, a BMIC-controlled MOSFET pair driven by real-time temperature sensing, or a cell with a built-in shutdown separator.

***Oura Ring 4's Research and Development***

20.    Defendant represents itself as taking research and development very seriously, stating that its Product is "[g]rounded in science, driven by research."[12] Defendant states that it "develop[s] cutting-edge sensing technology that exceeds the highest scientific standards[.]"[13]

21.    According to Defendant, "The process of crafting Oura Ring 4 took many years, a number of iterations, and countless feedback sessions with current and potential Oura members."[14] Defendant describes this process as "intensive."[15]

22.    Defendant touts the Oura Ring 4 as "cutting edge" and "the most accurate and comfortable Oura Ring yet."[16]

23.    Defendant's Industrial Design Director stated, "It's easy to make a ring, but it's really hard to make one that blends into your life; that you can carry on with life without noticing that it's there. So, that requires rocket science to make it super tight, reliable, [and] accurate."[17]

---

[12] *Science & Research*, OURA RING, https://ouraring.com/science-and-research (last visited Apr. 24, 2026).
[13] *Id.*
[14] *Inside the Ring: The Making of Oura Ring 4*, OURA RING, https://ouraring.com/blog/inside-the-ring-oura-ring-4/ (last visited Apr. 24, 2026).
[15] *Id.*
[16] *Id.*
[17] *Id.*

***Defendant Was and is Aware of Overheating Problems with the Product, Yet Has Failed to Fix the Problem or Warn its Customers***

24. Given Defendant's extensive research in developing the Product, Defendant knew or should have known of these defects before the Product reached the market.

25. Defendant knew or should have known about similar incidents with cellphones and other electronic devices using lithium batteries, which have been reported through the media and consumer protection agencies for years.

26. In addition to understanding the widespread reports of damage from other devices using lithium batteries, Defendant has publicly acknowledged this very issue with its Product. Multiple consumers reported their injuries from the Product overheating, in some cases causing burns and blisters, on Reddit.[18] In one thread, a user posted that they had the Product for about four or five months when they randomly "felt a fire on [their] finger", resulting in a blister, and their hand "smell[ing] like electronic fire."[19] The user posted photos of his blister and the Product, where the burn mark on the Product can be clearly seen:

 

---

[18] *See, e.g.*, u/Far-Yogurtcloset369, *Ring started smoking*, REDDIT (Dec. 6, 2025), https://www.reddit.com/r/ouraring/comments/1pf2fzv/ring_started_smoking/?share_id=yieM30FZj4 w8nlJh0pMFK&utm_content=1&utm_medium=android_app&utm_name=androidcss&utm_source= share&utm_term=1; u/stubentiger123, *Oura should address the recent overheating/smoking incidents*, Reddit (Dec. 6, 2025), https://www.reddit.com/r/ouraring/comments/1pfziur/oura_should_address_the_recent_overheatings moking/.
[19] *See* u/Far-Yogurtcloset369, *Ring started smoking*, REDDIT (Dec. 6, 2025),

27.     Several other users commented on the same thread that a similar incident happened to them while wearing the Product, with one stating, "[O]ura needs to start using higher quality batteries."[20]

28.     Among other statements, Defendant commented on one of the Reddit threads, stating "Thank you for raising this. We're aware of the reports shared here and are actively reviewing the individual cases directly with the members involved. We take any safety-related concern seriously and are working to evaluate the details."[21]

29.     Upon information and belief, Defendant has not released an official statement or warning regarding the risk of the Product overheating. However, Defendant's website does state, "If you experience redness or skin irritation on your finger while wearing your Oura Ring, remove it immediately. If symptoms persist longer than 2-3 days, please contact a dermatologist."[22]

30.     Despite knowledge and awareness, Defendant has failed to fix the root problem, notify or warn the public of the dangers its Product presented, initiate a recall of the Product where overheating was foreseeable, or otherwise address the problem.

31.     Defendant is and was aware of these reports and the hazards posed by the Product because consumers report the incidents directly to Defendant and on public forums that Defendant has access to, and Defendant has acknowledged the reports by responding to Reddit users and by responding directly to individual consumers bringing forth complaints. Many consumers report that Defendant failed to take their complaints seriously and refused to provide any compensation beyond merely replacing the dangerous and defective Product with the very same Product.

---

https://www.reddit.com/r/ouraring/comments/1pf2fzv/ring_started_smoking/?share_id=yieM30FZj4 w8nlJh0pMFK&utm_content=1&utm_medium=android_app&utm_name=androidcss&utm_source= share&utm_term=1.

[20] *Id.*

[21] *See, e.g.*, u/Oura_Ring's comment on the following post: u/stubentiger123, *Oura should address the recent overheating/smoking incidents*, Reddit (Dec. 6, 2025), https://www.reddit.com/r/ouraring/comments/1pfziur/oura_should_address_the_recent_overheatings moking/.

[22] *Product Safety & Use*, OURA RING, https://support.ouraring.com/hc/en-us/articles/43395388251283-Product-Safety-Use (last visited Apr. 3, 2026).

32. Despite knowledge of the overheating problem in the Product, Defendant has concealed from consumers the risks of overheating and burning. In fact, Defendant continues to advertise its Product as "comfortable for everyone, crafted to perfection, and long-lasting", stating that the Product, as the fourth-generation version of the Oura Ring, is "smarter, lighter, and more durable than the last."[23] Needless to say, a ring that has a risk of spontaneously overheating, smoking, and causing severe injury to its wearer, cannot be described as "comfortable", "crafted to perfection", or "durable".

33. Defendant knew or should have known as of the date of the first report, that the Product was defectively designed or manufactured, will fail without warning, poses a risk to the public, and is not suitable for its intended use. However, Defendant continues to fail to warn Plaintiffs, Class members, and the public about the inherent safety risk of the Product, despite having a duty to do so.

34. Defendant owed Plaintiffs and Class members a duty to disclose the defective nature of the Product, including the dangerous risk of overheating and burning, because Defendant:

    a. Possessed exclusive knowledge of the defects rendering the Product inherently more dangerous and unreliable than similar devices meant to track fitness and health; and

    b. Intentionally concealed the dangerous risks of the Product through its marketing campaign.

35. Defendant designed, engineered, developed, manufactured, tested, produced, assembled, labeled, supplied, imported, distributed, and sold the Product and its component parts and constituents, which were intended by Defendant to be used as a consumer smart ring.

36. The Product is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but can instead expose the public, including Plaintiffs and Class members, to serious injury.

---

[23] *Why Oura*, OURA RING, https://ouraring.com/why-oura (last visited Apr. 3, 2026).

***Plaintiff Fomin's Experience***

37.　Plaintiff Brittney Fomin is, and was at all times relevant to this action, a resident of the State of New York.

38.　Plaintiff Fomin purchased the Product from Defendant's website on July 11, 2025. Plaintiff Fomin wore the Product consistently, adhering to Defendant's usage instructions, for approximately seven months with no issue.

39.　On or around February 14, 2026, Plaintiff Fomin began experiencing severe discomfort from the Product, so she removed the Product from her finger. On or around the morning of February 15, 2026, Plaintiff Fomin awoke with her whole finger aching, and a visible burn mark from the Product.

40.　Photos taken by Plaintiff Fomin of her finger on February 15, 2026:



41.     Photo taken by Plaintiff Fomin of her finger on February 16, 2026:



42.     Photo taken by Plaintiff Fomin of her finger on February 17, 2026



CLASS ACTION COMPLAINT

43.     On or around February 15, 2026, Plaintiff Fomin submitted a report of her injury to Defendant, requesting a full refund and replacement Product. Defendant informed Plaintiff Fomin that she would need to pick one option—either a refund or replacement. Plaintiff Fomin responded that she would need to think about her options before responding, as she had seen other reports online of consumers experiencing the same issues. Plaintiff Fomin ultimately did not respond to Defendant's offer.

44.     Plaintiff Fomin saw a doctor for her injury, who prescribed her cortisone cream and instructed her not to wear the Product anymore. She still has visible scarring from the injuries she got from wearing the Product.

45.     Had Plaintiff Fomin known of the defects affecting the Product, she would not have purchased the Product or would have paid significantly less for it.

46.     Plaintiff Fomin remains interested in the Product and would purchase it again if she was confident Defendant had addressed the defects.

***Plaintiff Rapsky's Experience***

47.     Plaintiff Taylor Rapsky is, and was at all times relevant to this action, a resident of the State of Pennsylvania.

48.     Plaintiff Rapsky purchased the Product from a Target located in Greensburg, Pennsylvania, on November 28, 2025. Plaintiff Rapsky wore the Product consistently, adhering to Defendant's usage instructions, for approximately five months with no issue.

49.     On or around April 25, 2026, Plaintiff Rapsky began experiencing severe discomfort and burning from the Product, so she removed the Product from her finger. The sensation felt like a sunburn. Immediately upon removing the Product from her finger, she noticed that her skin was red and irritated circling around her finger where the Product sat. Later that same evening, Plaintiff Rapsky's finger began blistering, as shown below.

50.     On April 26, 2026, Plaintiff Rapsky visited urgent care, where the doctor confirmed that her injury was a burn from the Product. The doctor prescribed a topical ointment to treat her burn.

51.     Photos taken by Plaintiff Rapsky of her finger on April 26, 2026:

CLASS ACTION COMPLAINT

 

52.    Photos taken by Plaintiff Rapsky of her finger on April 29, 2026:

 

53.    On or around April 26, 2026, Plaintiff Rapsky submitted a report of her injury to Defendant, requesting a full refund. A customer representative responded that Defendant would open a support ticket to address the issue. As of the date of this Complaint, Plaintiff Rapsky has not communicated with Defendant further.

54.    Had Plaintiff Rapsky known of the defects affecting the Product, she would not have purchased the Product or would have paid significantly less for it.

55.    After this experience, Plaintiff Rapsky would not purchase the Product again, because she cannot feel confident that Defendant would fix the defects and make the Product safe to wear.

## CLASS ACTION ALLEGATIONS

56.    This action is brought by the named Plaintiffs on their behalf and on behalf of the proposed Class of all other persons similarly situated under Fed. R. Civ. P. 23(b)(2), (b)(3), and/or (c)(4). Specifically, the Classes consist of:

57.    The Nationwide Class:

**All persons residing in the United States who purchased the Product within the statute of limitations.**

58.    The New York Subclass:

**All persons residing in the State of New York who purchased the Product within the statute of limitations.**

59.    The Pennsylvania Subclass:

**All persons residing in the State of Pennsylvania who purchased the Product within the statute of limitations.**

60.    Excluded from the proposed Class and Subclasses are any claims for personal injury, wrongful death, or other property damage sustained by the Class and Subclasses; and any judge conducting any proceeding in this action and members of their immediate families.

61.    Plaintiffs reserve the right to amend the definition of the Class and/or add additional subclasses if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

62.    Numerosity. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in exclusive control of Defendant, Plaintiffs believe that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

63.    Commonality. Common questions of law or fact arising from Defendant's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class members. These common questions include, but are not limited to, the following:

       a.    Whether Defendant had knowledge of the defects affecting the Product;

       b.    Whether Defendant concealed defects affecting the Product;

c.   Whether Defendant's business practices, including the manufacture and sale of Products with a risk of overheating and burning that Defendant failed to adequately investigate, disclose, and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

d.   Whether Defendant was unjustly enriched at the expense of Plaintiffs and the Class;

e.   Whether Plaintiffs and the Class are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

f.   The amount and nature of such relief to be awarded to Plaintiffs and the Class.

64.   Typicality. Plaintiffs' claims are typical of those of other Class members because Plaintiffs and Class members all purchased the Product.

65.   Adequacy. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

66.   Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class members in that Plaintiffs and Class members all bought the same Product which was defective and dangerous. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

67.   Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class

members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

68.    Defendant has acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CAUSES OF ACTION

### COUNT I
**Fraudulent Concealment/Non-Disclosure**
*(On behalf of Plaintiffs and the Nationwide Class)*

69.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

70.    Defendant, through its advertising and marketing of the Product, concealed, and failed to disclose, material information regarding the fact that the Product was defectively designed and prone to overheating, smoking, and causing injury, despite knowing this specific information would be material to Plaintiffs and the Class.

71.    Defendant sought to fraudulently depict the Product as safe and durable. But these depictions failed to paint a true portrayal of the Product as Defendant concealed, and failed to disclose, material information regarding the fact that the Product was defectively designed and prone to overheating, despite sole and exclusive knowledge.

72.    At no time did Defendant disclose to Plaintiffs and the Class that the Product was defectively designed and prone to overheating.

73.    Plaintiffs and the Class interpreted Defendant's omissions and failure to disclose as a representation that the Product did not pose the threat of danger by and through, among others, overheating.

74.    As a direct result of Defendant's failure to disclose that the Product was defectively designed and prone to overheating, Plaintiffs purchased or otherwise paid money for the Product which they otherwise would not have done had Defendant disclosed the fact that the Product was defectively designed and prone to overheating.

75. At all times mentioned herein, Defendant was, and remains, in a superior position to know the truth about the Product and its propensity to overheat and cause injury.

76. The facts concealed by Defendant are material facts because any reasonable consumer would have considered the fact that the Product's propensity to overheat and cause injury to be important in deciding whether to purchase the Product as opposed to another, but less expensive, fitness and health tracking device.

77. When purchasing the Product, Plaintiffs and the Class reasonably and justifiably relied on Defendant's failure to disclose that the Product was prone to overheat. Plaintiffs and the Class would not have purchased the Product were it not for the material omissions by Defendant.

78. The intentional omissions by Defendant were a substantial factor in causing harm to Plaintiffs and the Class, and said harm would not have occurred absent the intentional omissions made by Defendant.

79. Defendant has deliberately caused and has intended to cause great harm to Plaintiffs and the Class with full knowledge of the wrongfulness of their conduct. Plaintiffs further allege that Defendant's conduct as alleged above was despicable, was carried on with a willful and conscious disregard of Plaintiffs' and the Class's rights and wellbeing, and subjected Plaintiffs and the Class to undue hardship. Therefore, Plaintiffs and the Class should be awarded punitive and exemplary damages sufficient to punish Defendant for engaging in this conduct and to deter similar conduct on its part in the future.

## COUNT II
### Unjust Enrichment
#### (On behalf of Plaintiffs and the Nationwide Class)

80. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

81. As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Product, Defendant charged a higher price for the Product than the Product's true value and Defendant obtained monies which rightfully belong to Plaintiffs and the Class.

82. Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Class, who paid a higher price for the Product which actually had less value. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

**COUNT III**
**Violation of the New York General Business Law**
**N.Y. Gen. Bus. Law § 349, *et seq.***
*(On behalf of Plaintiff Fomin and the New York Subclass)*

83.    Plaintiff Fomin and the New York Subclass incorporate by reference all preceding paragraphs as if fully set forth herein.

84.    Plaintiff Fomin and the New York Subclass are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

85.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. § 349(b).

86.    Under GBL § 349(a), "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

87.    In the course of Defendant's business, it failed to disclose and actively concealed the overheating and burn hazard in the Product with the intent that consumers rely on that concealment in deciding whether to purchase the Product.

88.    Defendant knew, should have known, or was reckless in not knowing that the defect in the Product rendered it unsuitable for its intended use.

89.    Despite Defendant's knowledge of the overheating and burn hazard, Defendant intentionally concealed the dangers of the Product while advertising them as "comfortable for everyone, crafted to perfection, and long-lasting." In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

90.    Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff Fomin and New York Subclass members, about the true performance and value of the Product.

91.    Plaintiff Fomin and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant suppressed.

92.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

93.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

94.    Plaintiff Fomin and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations. Plaintiff Fomin and New York Subclass members are entitled to recover their actual damages or fifty dollars, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiff Fomin and New York Subclass members are entitled to recover three times their actual damages. Plaintiff Fomin is also entitled to reasonable attorneys' fees.

**COUNT IV**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**
**71 PA. STAT. §§ 201-1, *et seq.***
***(On behalf of Plaintiff Rapsky and the Pennsylvania Subclass)***

95.    Plaintiff Rapsky and the Pennsylvania Subclass incorporate by reference all preceding paragraphs as if fully set forth herein.

96.    Plaintiff Rapsky, the Pennsylvania Subclass, and Defendant are "persons" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 71 PA. STAT. § 201-2(2).

97.    Under 71 PA. STAT. § 201-3, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

98.    Among others, Defendant violated the UTPCPL by "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." 71 PA. STAT. § 201-2(4)(vii)

99.    In the course of Defendant's business, it failed to disclose and actively concealed the overheating and burn hazard in the Product with the intent that consumers rely on that concealment in deciding whether to purchase the Product.

100. Defendant knew, should have known, or was reckless in not knowing that the defect in the Product rendered it unsuitable for its intended use.

101. Despite Defendant's knowledge of the overheating and burn hazard, Defendant intentionally concealed the dangers of the Product while advertising them as "comfortable for everyone, crafted to perfection, and long-lasting." In doing so, Defendant engaged in deceptive acts or practices in violation of the UTPCPL.

102. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff Rapsky and Pennsylvania Subclass members, about the true performance and value of the Product.

103. Plaintiff Rapsky and Pennsylvania Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant suppressed.

104. Defendant's actions set forth above occurred in the conduct of trade or commerce.

105. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

106. Plaintiff Rapsky and Pennsylvania Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's UTPCPL violations. Plaintiff Rapsky and Pennsylvania members are entitled to recover their actual damages or one hundred dollars ($100), whichever is greater. 71 PA. STAT. § 201-9.2(a). Additionally, because Defendant acted willfully or knowingly, Plaintiff Rapsky and Pennsylvania Subclass members are entitled to recover three times their actual damages. Plaintiff Rapsky is also entitled to reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enters judgment in her favor on every claim for relief set forth above and award them relief including, but not limited to, the following:

A. An Order appointing Plaintiffs to represent the Class pursuant to FRCP 23(a) and designating Plaintiffs' counsel as Class Counsel;

B. An order enjoining Defendant from selling the Product;

C.   For all damages, including but not limited to statutory damages, general damages, nominal damages, punitive damages, and compensatory damages (including economic losses in an amount according to proof at trial);

D.   For restitution for Plaintiffs and the Class in an amount according to proof at trial;

E.   An award for Plaintiffs for the costs of suit and reasonable attorneys' fees as provided by law;

F.   For interest upon any judgment entered as provided by law; and

G.   For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the Classes, hereby respectfully demand a trial by jury of all issues triable by right.

Dated: May 1, 2026

Respectfully submitted,

/S/ Robert Mackey

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey (SBN 125961)
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110
bobmackeyesq@aol.com

**MIGLIACCIO & RATHOD, LLP**
Jane Manwarring, Esq.*
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
jmanwarring@classlawdc.com

*\* pro hac vice anticipated*

*Attorneys for Plaintiff & the Putative Class*